UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH AMATO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 13-cv-13094-IT |
| | * | |
| MICHAEL BARONE and THOMAS STEELE, | * | |
| | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

June 1, 2015

TALWANI, D.J.

I.    Introduction

Plaintiff Joseph Amato ("Amato") alleges that on December 24, 2012, he was arrested in his home, taken outside in public view, and transported to the police station while nude from the waist down. Amato now brings claims against the arresting officers, Defendants Michael Barone ("Officer Barone") and Thomas Steele ("Sergeant Steele"), for an unreasonable seizure under the Fourth Amendment and a violation of privacy and civil rights under state statutory law. Finding summary judgment unwarranted on all claims, the court hereby DENIES Defendants' Motion for Summary Judgment [#24].

II.    Factual Background

For the purposes of summary judgment, the court views the evidence in the light most favorable to Amato and resolves any disputes of material fact in his favor. See Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008).

On December 24, 2012, Officer Barone and Sergeant Steele responded to a report of a domestic disturbance between Amato and his partner Christian Peters.[1] See Defs.' Concise Statement Material Facts Record Which The Moving Party Contends There Is No Genuine Issue To Be Tried ¶ 1 [#26] [hereinafter Defs.' Facts]. Officer Barone and Sergeant Steele found Peters at the home of a neighbor, Brenda LeBlanc ("LeBlanc"). Id.

After speaking with Peters, the officers conducted an initial search of all areas of Amato and Peters' home save for a locked office, the doorway to which was not opened after the officers knocked and announced their presence. Id. After speaking with Peters again, the officer returned to the home and again knocked on the locked office door and identified themselves. Id. Amato opened the door dressed only in a sweatshirt and a blanket wrapped around his body. Id. ¶¶ 2, 13-14; Plaintiff's L.R. 56.1 Statement of Material Facts Opp'n Defs.' Mot. Summ. J., Ex. A Amato Dep. 34:12-18 [#33-1] [hereinafter Pl.'s Facts].

The officers immediately placed Amato under arrest and handcuffed him as he stood in the doorway of the office. Defs.' Facts ¶¶ 3, 18, 64; Pl.'s Facts Ex. A Amato Dep. 37:18-23, 43:8-10. As he was being handcuffed, the blanket Amato had wrapped around his body fell off. Defs.' Facts ¶ 27; Pl.'s Facts ¶ 1. Amato was left wearing only a sweatshirt that ended at his waist, leaving his genitalia and buttocks exposed.[2] Pl.'s Facts ¶ 1.

Amato was compliant throughout his arrest. Pl.'s Facts, Ex. C Steele Dep. 84:10-15; Defs.' Resps. Pl.'s L.R. 56.1 Statement Material Facts Opp'n Mot. Summ. J., ¶ 10 [#36]

---

[1] Amato disputes whether a domestic disturbance actually occurred. This dispute is immaterial to resolution of the present motion.

[2] Defendants dispute the sweatshirt's length, suggesting it covered Amato's genitalia and upper thighs. Defs.' Facts ¶ 75. For the purposes of this motion, the court resolves this disputed fact in favor of Amato.

2

[hereainafter Defs.' Resps.] (admitting that Amato was compliant and did not resist arrest). After the blanket fell to the floor, Amato asked that he be allowed to put on his pants, which were lying approximately three feet away. Defs.' Facts ¶¶ 20-21, Pl.'s Facts ¶ 11, Ex. A Amato Dep. 42:24-43:10. The officers refused Amato's request, and Sergeant Steele told him to "shut the f**k up." Pl.'s Facts ¶ 11. Officer Barone picked up Amato's pants and carried them with him. Defs.' Facts at 67; Pl.'s Facts ¶ 12. At this time, Sergeant Steele told Amato "Merry f**cking Christmas." Pl.'s Facts at ¶ 12. Amato repeated his request to be allowed to put on pants several times.[3] Id. at ¶ 17.

Peters was not inside the residence or within sight of Amato at the time Amato was arrested. See Defs.' Facts ¶ 61, Ex E Barone Dep. 42:7-43:6 ("Was Christian Peters with you [when you returned to the house]?" "No . . . [t]he last I had seen him, he was still down at the reporting party's apartment."); Pl.'s Facts ¶ 13, Ex. B Peters Dep. 38:7-39:18 (explaining that Peters stood on an outside deck, where he could hear but not see Amato).

Officer Barone and Sergeant Steele led Amato, wearing only the sweatshirt, outside and down his driveway to a police vehicle at the bottom of the hill. Id. ¶ 16; see also Defs.' Facts ¶ 24. During this walk, Amato was visible to the officers, LeBlanc, a friend of LeBlanc, Peters, and the staff of an ambulance that had responded to the reported disturbance.[4] Defs.' Facts ¶ 54; Pl.'s Facts 16. At the bottom of the driveway, Peters approached Defendants with a pair of

---

[3] Defendants deny that Sergeant Steele made these statements and that Amato repeated his request. Defs.' Resps. ¶¶ 11, 17. The court adopts Amato's version of the facts for purposes of this motion.

[4] The parties dispute the length of this walk. Compare Defs.' Facts Ex. E Barone Dep. 41:4-9 ("a minute or so"), with Pl.'s Facts Ex. A Amato Dep. 52:4-13 ("a few minutes"). The parties also dispute the area's lighting. Compare Pl.'s Facts ¶ 19 ("very well lit"), with Defs.' Facts ¶ 3 ("no lights in the area other than the car and the Ambulance.") Accepting Amato's version of the facts for the purposes of this motion, the walk took several minutes on a well-lit path.

3

sweatpants and requested that he be allowed to give them to Amato. Pl.'s Facts ¶ 17. Defendants refused this request. Id.

Officer Barone transported Amato approximately five minutes by car to the police station.[5] Def.'s Facts ¶ 30; Pl.'s Facts ¶ 20. Upon entering the station, Amato was allowed to put on pants in the station's booking area. Def.'s Facts ¶ 30; Pl.'s Facts ¶¶ 20-21, Ex. D Barone Dep. 58:17-59:1. This booking area is monitored by a police officer via video camera. Pl.'s Facts ¶ 21; Defs.' Resps. ¶ 21.

III. Discussion

   A. *Standard of Review*

In resolving a motion for summary judgment, the court takes all properly supported evidence in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

   B. *Reasonableness of the Arrest*

Amato does not contest that the officers had probable cause to arrest him. However, he argues that the arrest was carried out in an unreasonable manner because the officers unjustifiably required him to remain partially nude outside of his residence.

In L.A. Cnty, Cal. v. Rettele, 550 U.S. 609, 615 (2007), the Supreme Court held that a brief detention while nude was reasonable in the absence of any "allegation that the deputies prevented . . . [the plaintiffs in that case] from dressing any longer than necessary to protect their

---

[5] Defendants suggest that Peters became "agitated and unruly" after Amato was placed in a police vehicle. See Defs.' Facts ¶ 2. This fact is immaterial to whether the officers were reasonable in not allowing Amato to put on pants prior to exiting his residence.

4

safety." The court reasoned that the embarrassment caused by forced nudity must be weighed against the officers' reasonable need "to secure the room and ensure that other persons were not close by or did not present a danger." Id. at 615-16. Although Rettele was decided in the context of a seizure effectuated during the service of a search warrant, the parties agree that Rettele is equally applicable to a seizure in the form of an arrest. See Payton v. New York, 445 U.S. 573, 585 (1980) ("[T]he warrantless arrest of a person is a species of seizure required by the [Fourth] Amendment to be reasonable.").

Accordingly, for the purposes of summary judgment, Defendants must show through undisputed facts that their decision to not allow Amato to put on pants before taking him from his home and to the police station was reasonable in light of countervailing safety or security needs. Rettele, 550 U.S. at 615; Hill v. McKinley, 311 F.3d 899, 909 (8th Cir. 2002) ("There was no legitimate security concern that required the officers to make Ms. Hill remain nude . . . ."); Hutchinson v. W. Va. State Police, 731 F. Supp. 2d 521, 537-42 (S.D. W. Va. 2010) ("[I]t was unreasonable to leave her naked any longer than necessary to clear the residence of danger . . . ."); Luster v. Ledbetter, 647 F. Supp. 2d 1303, 1309 (M.D. Ala. 2009) ("Luster was left exposed for a period of time . . . after there was no longer any plausible reason for her to be left exposed."); see also Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 407-08 (S.D.N.Y. 2009); Hunt v. Hunter, No. 1:07-CV-52, 2008 WL 2036703, at *11 (E.D. Tex. May 8, 2008).

In this case, it is undisputed that Amato was compliant when the officers placed him in handcuffs. Moreover, Defendants do not present evidence that they had reason to be concerned about their safety once Amato was in handcuffs. Although Defendants suggest that they did not know the contents of the office behind Amato, they do not dispute that Amato was outside of the

5

office (in the doorway) and that Officer Barone retrieved Amato's pants from the floor, which would have given the officers an opportunity to discover any objects therein. Moreover, the officers' initial search of the home included all areas outside the office, and the record reveals no evidence that it would have been unsafe to allow Amato to clothe himself in one of these previously searched areas before proceeding outside. See, e.g., Hutchinson, 731 F. Supp. 2d at 539-40 ("[O]nce the residence was cleared for dangers, there was no safety-based excuse to justify not clothing or covering Ms. Hutchinson. This is particularly true in this case, where there were twice as many law enforcement officers than detainees."). Insofar as the officers rely on a purported need to keep Amato separate from Peters, the undisputed record is that Peters was not within the residence or within sight during Amato's arrest.

On these facts, a jury could find that refusing Amato's request to be allowed to put on pants before he left the residence was unreasonable. Even if initially reasonable not to allow Amato to put on pants, in light of potential security concerns raised by the unsearched office, a jury could find that Defendants behaved unreasonably when they forced Amato to exit his home, walk down his driveway in sight of emergency response workers and neighbors, and travel to the police station while still exposed. See Hall v. Shipley, 932 F.2d 1147, 1154 (6th Cir. 1991) (finding it unreasonable to require an individual to remain unclothed in a living room for twenty to thirty minutes where an open door exposed him to the cold); Luster, 647 F. Supp. 2d at 1310 (finding it unreasonable to, "without justification, forcibly expose a seized person, completely nude, to the public."); Armstead v. Township of Upper Dublin, 347 F. Supp. 2d 188, 195 (E.D. Pa. 2004) (finding that the facts "weigh[ed] heavily towards objective unreasonableness" where a man was "marched . . . outside of his home, essentially naked from the waist down, in the cold rain, to the patrol car").

That the seizure in this case was of a shorter duration than that in some cited cases, see, e.g., Hall, 932 F.2d at 1154 ("twenty to thirty minutes"); Hutchinson, 731 F. Supp. 2d at 549 ("30 to 45 minutes"), does not change the court's conclusion. Even a brief period of nudity may be unreasonable if not supported by countervailing security interests, and this unreasonableness is compounded where a nude arrestee is exposed to both public view and to the extreme weather typical of Massachusetts in late December. Cf. United States v. Nascimento, 491 F.3d 25, 50 (1st Cir. 2007) ("When police encounter and arrest a partially clothed individual in his home, the need to dress him may constitute an exigency justifying the officers in entering another room in order to obtain needed clothing. . . . It suffices to say that both human dignity and the New England climate counseled here in favor of a more complete wardrobe." (citations omitted)).

C.  *Qualified Immunity*

The court uses a three-step test to determine if officers are eligible for qualified immunity: "(1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right." Wilson v. City of Bos., 421 F.3d 45, 52 (1st Cir. 2005) (citations omitted). Applying this test to the facts presented, qualified immunity is unwarranted.

First, as stated above, a jury could find that Officer Barone and Sergeant Steele acted in a manner that violated Amato's Fourth Amendment right to be free from unreasonable seizures.

Second, it was clearly established prior to December 24, 2012 that forced nudity for a period longer than required to ensure officer safety and security would constitute an unreasonable seizure under the Fourth Amendment. A "law is clearly established either if courts

7

have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct." Jennings v. Jones, 499 F.3d 2, 16 (1st Cir. 2007) (internal quotation marks and alteration omitted) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)). Courts may consider "not only Supreme Court precedent, but all available case law." Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d 81, 93 (1st Cir. 2002).

Here, the Supreme Court's 2007 decision in Rettele set out the right to be free from unjustified nudity during a seizure. The constitutional rule articulated in Rettele applies with "obvious clarity," Jennings, 499 F.3d at 16, to the act of removing a compliant and non-threatening arrestee from his home with his genitalia exposed and transporting him in public view. See, e.g., Hall, 932 F.2d at 1154 ("[R]equiring an individual to sit naked while exposed to the cold January air would violate such individual's 'clearly established' rights."); Armstead, 347 F. Supp. 2d at 196 ("[A]n individual's right to be free from unreasonable seizures involving . . . forcible removal from one's home naked from the waist down[] was clearly established . . . [before incident occurring in 2003].").

Third, a reasonable officer would have known that, in the absence of safety justifications, refusing to allow a compliant arrestee to cover his genitalia and buttocks and requiring the arrestee to leave his home and walk in public while exposed was unreasonable under the Fourth Amendment. See Luster, 647 F. Supp. 2d at 1311 ("[A] reasonable police officer should know that he cannot, without justification, forcibly expose a seized person, completely nude, to the public. It is clear that a reasonable officer would have the common sense to know that such unnecessary, deeply humiliating invasion of privacy is unreasonable under the Fourth Amendment."); see also Hall, 932 F.2d at 1154; Armstead, 347 F. Supp. 2d at 196.

8

Accordingly, summary judgment is DENIED as to Amato's Fourth Amendment claim.

D.     *Massachusetts Civil Rights Act*

Amato argues that Officer Barone and Sergeant Steele violated the Massachusetts Civil Rights Act by requiring him, "under coercion of arrest," to undertake "an unclothed, public march." Pl.'s Opp'n Defs.' Mot. Summ. J., 12 [#33].

The Massachusetts Civil Rights Act ("MCRA") prohibits

> any person or persons, whether or not acting under color of law, [to] interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth.

Mass. Gen. Laws ch. 12, § 11H. As the Massachusetts Supreme Judicial Court has explained, "coercion" occurs through "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Planned Parenthood League of Mass., Inc. v. Blake, 631 N.E.2d 985, 990 (Mass. 1994).

The act of placing an individual under arrest is "intrinsically coercive" for purposes of the MCRA. See Sarvis v. Bos. Safe Deposit & Turst Co., 711 N.E.2d 911, 918 (Mass. App. Ct. 1999); see also Barbosa v. Conlon, 962 F. Supp. 2d 316, 332 (D. Mass. 2013) (quoting Sietins v. Joseph, 238 F. Supp. 2d 366, 378 (D. Mass. 2003)). However, "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the Act." Longval v. Comm'r of Correction, 535 N.E.2d 588, 593 (Mass. 1989). Accordingly, Amato may not claim that he was coerced into abandoning his right to be free from unreasonable seizure by the act of being unreasonably seized. See, e.g., Inman v. Siciliano, No. 10-10202-FDS, 2012 WL 1980408, at *14 (D. Mass. May 31, 2012) ("[T]he seizure itself is the alleged constitutional violation. That violation cannot satisfy both the 'coercion' and 'violation' elements

9

of an MCRA claim."); Goddard v. Kelley, 629 F. Supp. 2d 115, 129 (D. Mass. 2009) ("[A finding] that the defendants . . . threatened arrest in order to cause him to give up his right to be free from false arrest . . . would torture the statute well beyond its plain meaning . . . .").

Here, however, Amato argues that the act of being placed under arrest coerced him into an "unclothed, public march." Put otherwise, Amato alleges that Defendants interfered with his right to privacy through coercion. A jury could reasonably find on the evidence presented—namely, that Officer Barone and Sergeant Steele refused Amato's request to clothe himself, despite a lack of plausible safety concerns—that the officers' actions were intended to interfere with Amato's right to privacy. See Davis v. Rennie, 264 F.3d 86, 112 (1st Cir. 2001) (finding that holding inmate down so another officer could strike him could be a coercive act depriving inmate of his Eighth Amendment rights); Swain v. Spinney, 117 F.3d 1, 12 (1st Cir. 1997) ("[A] jury could find that Officer Hayes used the strip search to humiliate or punish Swain . . . to weaken her perceived resistance to her questioning."); Walker v. Jackson, No. 12-10267, 2014 WL 5500664, at *4 (D. Mass. Oct. 31, 2014) (finding that an officer's use of force to enter an apartment could be a coercive act depriving a defendant of his right to be free from warrantless search); Sarvis, 711 N.E.2d at 919 (finding that the arrest of tenants who defendant claimed were subject to eviction was not a direct violation of their right to a pre-eviction hearing, but "the means by which the defendants interfered with its enjoyment").

Accordingly, summary judgment is DENIED as to Amato's Massachusetts Civil Rights Act claim.

E. *Massachusetts Privacy Act*

Amato alleges that his right to personal privacy, as codified by Massachusetts statutory law, was violated when the officers arrested him, made him walk down his driveway, and took him to the police station while nude from the waist down.

The Massachusetts Privacy Act holds that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. Laws ch. 214, § 1B. "When determining whether an invasion of bodily privacy has violated the statute, the Massachusetts courts balance the individual's right of privacy with the interests involved when violating that privacy." Hernandez v. Montanez, 36 F. Supp. 3d 202, 217 (D. Mass. 2014) (citing Webster v. Motorola, 637 N.E.2d 203, 206-08 (Mass. 1994) (balancing interests of employer in screening employees against the bodily intrusion of a urinalysis test)); see also Spencer v. Roche, 659 F.3d 142, 150 (1st Cir. 2011) (finding that a body cavity search "performed in accordance with constitutional requirements and that is otherwise reasonable does not constitute an actionable invasion of privacy under Massachusetts law").

As stated above, on the facts in the summary judgment record, a jury could find that Amato's forced exposure was not reasonably justified by any countervailing interest. Accordingly, summary judgment is DENIED on this claim.[6]

---

[6] Defendants briefly argue that they are immune from Amato's state-law claims pursuant to Mass. Gen. Laws ch. 209A, § 6, which provides that "[n]o law officer shall be held liable in any civil action regarding personal injury or injury to property brought by any party to a domestic violence incident for an arrest based on probable cause when such officer acted reasonably and in good faith." Because immunity applies only where officers "acted reasonably," id., and a jury could find that Defendants arrest of Amato was effectuated in an unreasonable manner, summary judgment is also unwarranted on this ground.

11

IV.     Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment [#24] is DENIED.

IT IS SO ORDERED.

June 1, 2015                                              /s/ Indira Talwani
                                                          United States District Judge